c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| JASON EUGENE,<br>Plaintiff | CIVIL ACTION NO. 1:18-CV-01077 |
| VERSUS | JUDGE DRELL |
| KEITH DEVILLE, *ET AL.*,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are the following cross-motions:[1] (1) a Motion for Summary Judgment (ECF No. 47) filed by Plaintiff Jason Eugene ("Eugene"); (2) a Motion for Summary Judgment (ECF No. 51) filed by Defendants Warden Keith Deville ("Deville") and Deputy Warden Jody Floyd ("Floyd"); and (3) a "Motion Attachment to Summary Judgment" ("Motion Attachment")[2] (ECF No. 54) filed by Eugene. Deville and Floyd seek summary judgment as to Eugene's claims of deliberate indifference for his 10-month delay in dental care and as to any supervisory liability of Deville or Floyd. ECF No. 52 at 15. It appears Eugene seeks summary judgment in his favor for his deliberate indifference claim. ECF No. 47 at 2.

---

[1] The motions were not filed as cross-motions. However, the Court construes the pending motions for summary judgment as cross-motions.

[2] Eugene separately filed a "Motion Attachment to Summary Judgment," (ECF No. 54) which was docketed as a second summary judgment motion. However, the second filing appears to be a brief and exhibits in support of his first two-page summary judgment motion (ECF No. 47). Therefore, although it was docketed as a second motion for summary judgment, the undersigned construes the "Motion Attachment" (ECF No. 54) as Eugene's brief and summary judgment evidence in support of his Motion for Summary Judgment (ECF No. 47).

Eugene's Motion for Summary Judgment (ECF No. 47) is defective and fails to establish there are no genuine issues of material fact. Eugene's motion (ECF No. 47) should be DENIED. And Eugene's Motion Attachment (ECF No. 54) should be construed as a brief and exhibits in support of his Motion (ECF No. 47) and docketed accordingly.

And because there is no genuine issue of material fact that Deville or Floyd was deliberately indifferent to Eugene's serious medical needs or liable under supervisory liability, Deville's and Floyd's Motion for Summary Judgment (ECF No. 51) should be GRANTED.

## I.   Background

Eugene filed a *pro se* civil rights Complaint (ECF No. 1) and Amended Complaint (ECF No. 10), *in forma pauperis*, under 42 U.S.C. § 1983. In addition to Deville and Floyd, Eugene named Defendants Assistant Warden Bill Tigner ("Tigner"), Medical Director Randi Price ("Price"), Nurse Practitioner Kathleen Richardson ("Richardson"), and Secretary James LeBlanc ("LeBlanc") (collectively, "Defendants"). ECF No. 1 at 3, 6.

At the time of filing, Eugene was an inmate in the custody of the Louisiana Department of Corrections ("DOC"). He was last incarcerated at the Bossier Parish Reentry Facility in Plain Dealing, Louisiana, but has been released from prison. ECF No. 72.

Eugene challenged the medical care he received while incarcerated at Winn Correctional Center ("WCC"). He asserted Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment for Defendants' ten-month delay in dental treatment and for Defendants' refusal to treat his Hepatitis C. *Id.* at 6. He further asserted Defendants are liable under La. Civ. Code art. 2315. *Id.* He seeks monetary damages, including punitive damages. *Id.* at 7.

He claimed LaSalle Management Company ("LMC") assumed operations of WCC around October of 2015. *Id.* at 3. He further claimed that under policy and custom of LMC and Deville, no medical personnel were present at WCC between the hours of 4:00 p.m. and 4:00 a.m., and on weekends. *Id.* at 4. He asserted that due to budget cuts, offenders were denied dentures. *Id.*

Eugene arrived at WCC on May 3, 2016. *Id.* He sought dental treatment on October 31, 2016 due to "broken and decayed teeth associated with severe pain, fever, swollen gums, abscesses, bleeding gums, [and] sleeplessness." *Id.* Eugene alleged that he was first examined by a dentist on August 31, 2017 – 10 months after his request – and the dentist extracted six teeth. The following month, the dentist extracted six more teeth. *Id.* Eight additional teeth were extracted in October, and eight more in November 2017. *Id.* at 5.

In December of 2017, Eugene submitted a request for dentures and treatment for Hepatitis C. *Id.* In response to his request, Price responded: "[Y]ou are in clinic for hepatitis and they monitor labs. As long as your labs are normal with [sic] yours are good that's all that needs to be done." *Id.*

In January 2018, Price reviewed Eugene's chart and responded that weekly weight checks were being conducted and a soft food diet was prescribed. ECF Nos. 1-2 at 6, 11-1 at 3. Price advised Eugene that the weekly weight checks does not guarantee he would receive dentures. *Id.*

In March of 2018, Eugene submitted a letter to Deville requesting treatment for Hepatitis C and a transfer to another facility. ECF No. 1 at 5. Eugene alleges he filed an administrative grievance for the failure to provide dentures and Hepatitis treatment, as well as the ten-month delay for dental treatment. *Id.* He claims he did not obtain relief and, untreated, his Hepatitis C could harm his liver and necessitate a transplant in the future. *Id.*

On initial review, Eugene was ordered to amend his Complaint to address whether he submitted any written requests for dental treatment, whether he filed any additional sick calls regarding dental complaints, the dates of such requests, and responses thereto. ECF No. 9. He was ordered to include any appeals of denials, and to provide copies of responses at each level. *Id.*

In an Amended Complaint, Eugene claimed the prison has an unconstitutional policy of denying dentures. ECF No. 10. He alleged that on May 28, 2018, he submitted another letter to Deville regarding his request for dentures. *Id.* at 1. He asserted Deville failed to respond, but in response to his second-step grievance expressed that "[t]he matter concerning dentures has been fully addressed." *Id.* Eugene alleged he did not pursue the matter further. *Id.* He alleged the LMC Offender Handbook states they "do not provide dentures or other cosmetic devices to

enhance appearance." *Id.* Eugene added LMC as a Defendant for its unconstitutional policy of not providing dentures for offenders, as allegedly sanctioned by LeBlanc. *Id.* at 1-2.

The Court denied and dismissed Eugene's Complaint, as amended, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), for failure to sufficiently allege deliberate indifference and state a claim against supervisory officials. ECF Nos. 12, 16. Eugene appealed, and the United States Court of Appeal for the Fifth Circuit affirmed in part, but remanded Eugene's claim regarding the alleged 10-month delay in dental treatment. ECF No. 22. Specifically, the Fifth Circuit instructed further proceedings as to the merits of whether medical staff was aware of Eugene's dental pain and failed to provide care during the 10-month delay and whether Eugene's claims that a reduced medical staff resulted in delayed medical care gave rise to supervisory liability. *Id.* at 4.

On remand, the Court ordered Eugene to supplement his pleadings with medical records regarding his dental problems, copies of any grievances, and copies of responses received regarding the delay in dental treatment. ECF No. 24. Eugene responded and the Court ordered service of summonses. ECF No. 28. [3]

---

[3] Summonses were returned executed via United States Marshal, filed on June 28, 2021, as follows: Deville, Floyd, and Richardson were each served on July 14, 2020; Tigner was served on July 14, 2020; and Price was served on July 16, 2020. ECF Nos. 66, 67. On November 20, 2020, Deville and Floyd answered the Complaint and Amended Complaint. ECF No. 35. On July 20, 2021 – after Deville and Floyd filed for Summary Judgment, Price, Richardson, and Tigner separately answered the Complaint and Amended Complaint. ECF No. 71. However, to date, there is no record of summonses ever being requested as to LeBlanc or LMC. *See* ECF No. 34. Thus, the undersigned RECOMMENDS that LeBlanc and LMC be dismissed under Local Rule 41.3 for failure to serve the summons and complaint.

The parties were ordered to comply with the Court's Memorandum Order (ECF No. 28) by filing a Motion for Summary Judgment or Statement of Issues. ECF No. 44. Eugene filed a 2-page "Motion for Summary Judgment" without a Statement of Undisputed Material Facts. ECF No. 47. He separately filed a "Motion Attachment to Summary Judgment," (ECF No. 54) which was docketed as a second summary judgment motion. However, it appears to be a brief and exhibits in support of his original 2-page motion. Eugene seeks summary judgment against Defendants, arguing that his 10-month delay in dental care was due to the deliberate indifference to his serious medical needs. ECF Nos. 47, 54.

Deville and Floyd also seek summary judgment. ECF No. 51. They separately filed an Opposition to Eugene's "Motion for Summary Judgment" and "Motion Attachment to Summary Judgment." ECF No. 64. In support, Deville and Floyd submit the following: (1) Statement of Uncontested Material Facts (ECF No. 41); (2) Eugene's deposition transcript (ECF No. 52-2); (3) Deville's Affidavit (ECF No. 52-3); (4) Floyd's Affidavit (ECF No. 52-4); (5) Eugene's medical records from WCC (ECF No. 52-5); (6) and Eugene's Administrative Remedy records (ECF No. 52-6). Eugene did not file an opposition.

## II.    Law and Analysis

### A.    A movant is entitled to judgment as a matter of law where there is no genuine dispute as to any material fact.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Paragraph

(e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly
> address another party's assertion of fact as required by Rule 56(c), the
> court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--
> including the facts considered undisputed--show that the movant is
> entitled to it; or
> (4) issue any other appropriate order.[4]

"A genuine dispute of material fact exists 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Hefren v.

McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment,

a court must construe all facts and draw all inferences in the light most favorable to

the non-movant. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).  However, a

mere scintilla of evidence is insufficient to defeat a motion for summary judgment.

*See Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

### B.    Eugene's Motion for Summary Judgment and "Motion Attachment to Summary Judgment" are procedurally defective, and fail to establish there is no genuine issue of material fact entitling him to summary judgment.

Eugene filed a one-page motion for summary judgment.  ECF No. 47.  However,

the motion was not accompanied by a memorandum in support, statement of

---

[4] Local rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a
statement of undisputed facts submitted by the moving party will be deemed admitted unless
the opposing party controverts those facts by filing a short and concise statement of material
facts as to which that party contends there exists a genuine issue to be tried.

uncontroverted facts, or evidence. ECF No. 47. He subsequently filed a "Motion Attachment to Summary Judgment," including exhibits which presumably are his brief and evidence in support of his original two-page motion. ECF No. 54. However, Eugene still did not include a statement of uncontested material facts. Eugene makes a general reference to his Complaint and what his "medical record[s] would show." ECF No. 54 at 1, 3. However, he does not make any specific reference to the record or any exhibits.

Under Local Rule 56.1, "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Eugene is proceeding *pro se*, and the Court must afford him some leniency in filings. *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002). However, *pro se* litigants must still comply with the same rules of procedure governing other litigants and make arguments capable of withstanding summary judgment. *Thorn v. McGary*, 684 Fed.Appx. 430, 433 (5th Cir. 2017); *see also Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007). Eugene is not excused from complying with the Rules of Civil Procedure and the Court's local rules. *See Whiting v. Kelly*, 255 Fed.Appx. 896, 899-900 (5th Cir. 2007) ("[P]articularized additional notice of the potential consequences of a summary judgment motion and the right to submit opposing affidavits need not be afforded a *pro se* litigant. The notice afforded by the Rules of Civil Procedure and the local rules [is] . . . sufficient.").

Because Eugene's procedurally defective motion fails to establish material facts not in dispute that entitle him to summary judgment, his motion (ECF Nos. 47, 54) should be denied without prejudice.[5]

## C.    Floyd and Deville are entitled to summary judgment.

Floyd and Deville seek summary judgment as to the Eugene's remaining claims of deliberate indifference under the Eighth Amendment and for supervisory liability for his alleged 10-month delay in dental treatment. ECF No. 52. Deville and Floyd submit a Statement of Uncontested Material Facts (ECF No. 52-1) and supporting exhibits (ECF Nos. 52-2, 52-3, 52-4, 52-5, 52-6). Eugene did not file an opposition to their motion or controvert their statement of material facts. Thus, the Court deems admitted Deville and Floyd's Statement of Uncontested Material Facts (ECF No. 52-1) as follows.[6]

In May of 2016, Eugene was serving a sentence for the Louisiana DOC and was housed at WCC in Winnfield, Louisiana. ECF No. 52-1 at 1. He arrived at WCC on May 2, 2016. *Id.* His teeth were not causing him pain when he arrived at WCC. *Id.* at 2. On October 31, 2016, he submitted a written medical request concerning tooth pain. *Id.* at 1. On August 31, 2017, a dentist examined him. *Id.* at 2. As of April 5, 2021, Eugene had not been receiving dental care since leaving WCC. *Id.* While Eugene was waiting for a dental appointment, he had access to pain medication,

---

[5] However, the Court addresses herein his brief and evidence in its consideration of Deville and Floyd's summary judgment motion.

[6] The failure to file an opposition and statement of contested material facts requires the Court to deem Deville and Floyd's Statement of Uncontested Material Facts admitted. L.R. 56.2W.

specifically Tylenol and Ibuprofen. *Id.* Eugene saw the WCC medical staff multiple times for various ailments. *Id.* Neither Deville nor Floyd punished Eugene at WCC. *Id.*

Eugene signed papers to be put on a list to see a dentist. *Id.* He knew that an individual other than Deville or Floyd had to approve any outside treatment. *Id.* At the time of the alleged claim, Deville and Floyd were Wardens at WCC. *Id.* At WCC, Wardens and Assistant Wardens are not involved in medical decisions involving inmates, including medical issues related to dental. *Id.* at 3. WCC medical personnel determine if an offender needs medical care, including whether an offender needs to see a specialist for additional medical care or treatment such as a dentist. *Id.* Neither Deville nor Floyd are medical professionals, and they rely on the medical opinions of providers as to whether offenders need medical care or need to see an outside specialist such as a dentist. *Id.*

Deville and Floyd lack the medical training necessary to diagnose offenders, including Eugene. *Id.* Any observation Deville or Floyd may have made of Eugene during his incarceration was not in an effort to evaluate him medically. *Id.* Neither Deville nor Floyd recalls ever speaking to Eugene about any medical issues he was having, including dental issues. *Id.* at 3-4. Deville would defer to the medical judgment of WCC medical staff. *Id.* Floyd did not have knowledge of the medical or dental complaints described by Eugene. *Id.* at 4.

Eugene was treated at WCC for various ailments unrelated to this action, including hypertension. *Id.* He complained of dental pain for the first time on or

about October 31, 2016, along with other ailments. *Id.* On that date, he was given Motrin for pain and placed on a list to see a dentist. *Id.* Eugene next complained of tooth pain on May 23, 2017. *Id.* He was given Ibuprofen for pain and signed a consent to see a dentist for extractions. *Id.* at 5. He was to take the Ibuprofen as needed. *Id.* A dentist saw Eugene on August 31, 2017, after which he was given pain medication. *Id.*

Floyd was not involved in any grievance or Administrative Remedy Procedure ("ARP") filed by Eugene. *Id.* WCC Administrative Remedy records show that Deville was not involved with any grievance or ARP filed by Eugene concerning his teeth, other than his request for dentures. *Id.* at 5. No evidence or testimony shows Floyd had subjective knowledge of any of Eugene's medical complaints. *Id.* Deville does not recall speaking to Eugene about any medical issues he may have had. *Id.*

Deville and Floyd argue that the uncontested material facts establish that Eugene received constitutionally adequate medical care for his dental issues, and that there is no evidence of supervisory liability as to Deville or Floyd.

1. **The Eighth Amendment protects against deliberate indifference to a prisoner's serious medical needs.**

Under the Eighth Amendment, prisoners are entitled to receive "adequate medical care." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with "deliberate indifference" to the serious medical needs of prisoners. *See Farmer*, 511 U.S. at 834; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Deliberate indifference "is

11

an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006), 463 F.3d at 346 (citation omitted). A prison official is only deliberately indifferent if he knows of an "excessive risk to inmate health and safety" and disregards that risk. *Farmer*, 511 U.S. at 837.

First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind – deliberate indifference to a prisoner's constitutional rights – to be subject to § 1983 liability. *See Farmer*, 511 U.S. at 834. The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. *Id.*

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs. *Easter*, 467 F.3d at 464 (citing *Domino v. Tex. Dep't of Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001)). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

But a decision of whether to provide additional medical treatment is a classic example of a matter left for medical judgment. *See Gobert*, 463 F.3d at 347; *Domino*, 239 F.3d at 756. "Where a prisoner has received . . . medical attention and the dispute

is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

A prisoner's dissatisfaction with the care choices made by prison medical personnel does not, on its own, present a constitutional violation. *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (citing *Gobert*, 463 F.3d at 346). Negligence – even gross negligence – does not implicate the Constitution and does not provide a basis for a § 1983 claim. *Farmer*, 511 U.S. at 836. ("[D]eliberate indifference entails something more than mere negligence."). Prisoners are not entitled to the "best medical care money can buy." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

### 2. <u>Deville and Floyd were not deliberately indifferent to Eugene's serious medical needs.</u>

Deville and Floyd argue the remaining claim against Floyd for deliberate indifference should be dismissed as no evidence establishes that Floyd had knowledge of Eugene's alleged medical issues, that Eugene spoke to Floyd about his dental issues, or that Floyd had any knowledge as to the alleged delay in obtaining dental care. ECF No. 52 at 12. They further argue that, even if Deville was told about Eugene's dental situation, the evidence shows reasonable steps were taken to address his complaints. *Id.* They present unrefuted evidence in support of their motion.

Eugene gave deposition testimony on April 5, 2021. ECF No. 42-2. He testified he has had some dental and teeth issues. *Id.* at 5. He testified that during the 10-month delay in waiting to get his teeth pulled, he was in pain and suffering, had high blood pressure, his teeth were cutting his gums, and his face was swollen. *Id.* at 6.

13

He stated that he spoke to the nurse practitioner, that "the whole staff" knew, and that they did nothing until 10 months later when he saw a dentist. *Id.*

Eugene testified he was given medication every now and then during that time, but otherwise had to buy his own Ibuprofen and Tylenol. *Id.* Eugene testified he did not receive any antibiotics until after his teeth were pulled. *Id.* Before his teeth were pulled, he admits he was given Ibuprofen for pain. *Id.* He testified he cannot take Tylenol because he is allergic. *Id.* He also received medications for high blood pressure and high cholesterol. *Id.* During the delay, he saw the nurse multiple times and was told he would see a dentist. *Id.* at 7.

Eugene testified that neither Deville nor Floyd punished him. *Id.* at 8. He never met with Floyd or spoke to him about his medical condition. *Id.* But he testified he did speak to Deville about his medical condition. *Id.* Eugene testified he told Deville twice about his condition and "he told [him] he would go look into it." *Id.* He testified Deville acknowledged receipt of his letter and, on the second time they spoke said he talked to Medical Director Price about his history. *Id.* Eugene could not recall what Price said. *Id.*

Eugene admitted that when he got to WCC, he had teeth problems. *Id.* But he blames WCC for the pain and suffering during the long delay it took to see a dentist. *Id.* at 8-9. Eugene further testified he went to Dr. H.D. (Bill) Gaddis ("Dr. Gaddis") for extraction. *Id.* Eugene stated that, upon arrival at WCC, he had not been in pain with his teeth until a few months later. *Id.* He stated he signed papers to be placed on a dentist list about three times. *Id.* He did not recall who approves

14

him going to the dentist, but believed Price had the "say-so about all outside medical treatment." *Id.*

Deville and Floyd both attested they were not involved in medical decisions involving inmates, including dental issues. ECF Nos. 52-3 at 1, 52-4 at 1. They further attested that WCC medical personnel determine if an inmate needs medical care, including a specialist such as a dentist. *Id.* And they admitted they are not medical professionals and rely on the medical opinion of providers as to whether an inmate needs medical care or needs to see an outside specialist. *Id.* Neither have the medical training necessary to diagnose offenders. *Id.* Neither recalled ever speaking to Eugene about any medical issues, including any dental issue. ECF Nos. 52-3 at 2, 52-4 at 1. Floyd attested he has no knowledge of any medical or dental issues experienced by Eugene during his incarceration at WCC. ECF No. 52-4 at 1.

Deville attested that any observation of Eugene was not to medically evaluate him. ECF No. 52-3 at 1. Deville further attested that if he ever did speak to Eugene, his policy is to advise the inmate to fill out the proper medical care request form or grievance form. *Id.* at 2. And it was his policy to always defer to the medical judgment of WCC medical staff regarding inmates' medical care and treatment. *Id.* Deville did not recall reviewing any grievance or ARP form by Eugene for medical treatment, including dental treatment, or concerning pain caused by a delay in dental treatment other than a request for dentures. *Id.*

A review of Eugene's medical records showed a transfer summary from Elayn Hunt Correctional Center ("EHCC") dated April 29, 2016, reflecting medical problems

that included "dental caries." ECF No. 52-5 at 9. On April 11, 2016, records from EHCC also showed dental caries noted for Eugene. *Id.* at 131. An April 27, 2016, a screening at EHCC noted "mutilated teeth." *Id.* at 140. EHCC noted Eugene was to seek treatment at a permanent facility. *Id.* at 141.

Eugene had an intake screening on May 2, 2016, on arrival at WCC. ECF No. 52-5 at 1-8. He was referred for an Outside Clinic Appointment. *Id.* at 4. On October 25, 2016, Eugene requested a dentist, complaining that he is "in pain" and that his mouth hurt. *Id.* at 126. On October 31, 2016, Eugene was seen and placed on a dentist list. *Id.* at 66, 126-27. He complained he had been having pain in his right top and bottom teeth for approximately a week. *Id.* at 127. Decaying was noted to both his bottom and top teeth. *Id.* Richardson ordered Motrin 600 milligrams for Eugene to take orally twice a day for a week. *Id.* at 66, 126-127. Medication Administration records also show Eugene had frequent interactions with medical personnel for blood pressure monitoring and administration of blood pressure and cholesterol medications from October of 2016 to August of 2019. *Id.* at 14-51, 55-66.

On May 23, 2017, Eugene was treated at the chronic clinic with complaints of severe pain for his decayed and broken teeth, as well as increased blood pressure. *Id.* at 115. His records state he "admits to pouring salt into his decayed teeth to help with pain. *Id.* And he requested to be scheduled with a dentist for tooth extraction. *Id.* On May 24, 2017, Eugene received Ibuprofen 600 milligrams ("mg") to "Keep-On-Person" ("KOP"). *Id.* at 45.

In May of 2017, Eugene was referred the dentist for tooth extraction, and he provided informed consent. *Id.* at 64, 101, 115. On August 31, 2017, Eugene received Acetaminophen 325 mg, salt packets, and gauze to KOP. *Id.* at 41, 60, 100. He was also given Penicillin 500 mg and Ibuprofen 800 mg. *Id.* at 38, 60, 100. This was the end of the 10-month period of which Eugene complained.

On September 21, 2017, Eugene was transported to the dentist and had four teeth extracted. *Id.* at 80. He was prescribed Penicillin 500 mg, Ibuprofen 800 mg, Tylenol 325 mg, gauze, salt packets, and dental instructions. *Id.* at 39, 99. It was noted he refused the Tylenol. *Id.* at 39. Records show that in October of 2017, Richardson provided him to KOP Ibuprofen 800 mg tablets to take twice daily with food and Penicillin 500 mg. *Id.* at 33, 60, 98. On November 9, 2017, Eugene was transported to the dentist to have nine teeth extracted. *Id.* at 80. Per Dr. Gaddis, Eugene was given post-extraction dental supplies to KOP, including Tylenol, salt packets, and gauze. *Id.* at 32, 59, 80, 97. He was also given to KOP Ibuprofen 800 mg for three days and Ibuprofen 600 mg for 10 days. *Id.* at 33-34, 59. On November 13, 2017, Richardson requested Eugene be issued a soft food diet due to all but 4 teeth being pulled. *Id.* at 34, 53.

Although Eugene did not refute the affidavits and failed to file an opposition, the Court examined Eugene's submissions on his summary judgment motion. In his pleadings, Eugene admits he no longer needs pain medication. ECF No. 54 at 1. He also admits he was taking Ibuprofen for his tooth pain while waiting to see a dentist from October 2016 through August 2017. *Id.* at 1-2. However, he claims he was not

provided pain medication during the entire 10-month delay. *Id.* at 2. The records Eugene submits in support show October 31, 2016 and May 23, 2017 treatment for his pain complaints. *Id.* at 9-12. However, the records evidence he was prescribed Ibuprofen for pain at both visits. *Id.*

A delay in medical care violates the Eighth Amendment only if the delay is based on deliberate indifference, and results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also Eugene v. Deville*, 791 Fed.Appx. 484, 485 (5th Cir. 2020) (citing *Easter*, 467 F.3d at 464) (internal quotations omitted)). Likewise, "pain suffered during a delay in treatment" for a serious medical need is actionable under the Eighth Amendment. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Tustin v. Livingston*, 766 Fed.Appx. 174, 178 (5th Cir. 2019) (citations omitted).

Here, there is no evidence of pain complaints for which Eugene was not prescribed pain medication. Rather, the evidence shows Eugene was treated for his complaints of pain and provided medication at those visits, while waiting to see a dentist. He was also provided pain medication after each extraction surgery. The summary judgment evidence shows that neither Deville nor Floyd ignored Eugene's complaints, refused to treat him, or were deliberately indifferent to his serious medical needs. *See Smith v. Harris*, 401 Fed.Appx. 952, 953 (5th Cir. 2010).

18

3.   <u>There is no genuine issue of material fact that Deville or Floyd bears supervisory liability.</u>

Deville and Floyd also seek summary judgment of Eugene's claim of supervisory liability.  ECF No. 52 at 13.   In its mandate, the Fifth Circuit noted Eugene's original Complaint asserted "the prison administration had reduced medical staff in order to save costs, which resulted in the undue delay in treatment." *Eugene*, 791 Fed.App. at 485.  The mandate appears to include a claim of supervisory liability for the alleged undue delay in treatment.  *Id.* at 485-86.

Section 1983 does not impose supervisory liability under a theory of *respondeat superior*.  *See Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Rather, officials must have personally acted to deny a constitutional or statutory right. *Id.*  Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts taken from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 458-59 (5th Cir. 2001).

Supervisory officials are entitled to defer to the judgment of medical professionals.  *See e.g., Vasquez v. Dretke*, 226 Fed.Appx. 338 (5th Cir. 2007). "Supervisory liability [may exists] even without overt personal participation in [an] offensive act if supervisory officials implement a [constitutionally deficient] policy." *Terry v. LeBlanc*, 479 Fed.Appx. 644, 647 (5th Cir. 2012) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

19

Here, although Eugene alleges staffing issues led to his delay in treatment, he fails to refute Deville's and Floyd's summary judgment evidence. There is no evidence of any deficient policy directed to WCC medical staff to disregard a known substantial risk of serious harm. No genuine issue of material fact exists as to whether Deville or Floyd were personally involved in any constitutional deprivation. And no evidence establishes Deville or Floyd implemented an unconstitutional policy. Thus, Deville and Floyd are entitled to summary judgment as to Eugene's claims of supervisory liability for the alleged delay in treatment.

## III.    Conclusion

Because Eugene's Motion for Summary Judgment (ECF No. 47) is defective and fails to establish there are no genuine issues of material fact in support of his claims, Eugene's motion (ECF No. 47) should be DENIED. And Eugene's Motion Attachment (ECF No. 54) should be CONSTRUED as a brief and exhibits in support of his Motion (ECF No. 47) and docketed accordingly.

Because there is no genuine issue of material fact that Deville or Floyd was deliberately indifferent to Eugene's serious medical needs or is liable under a theory of supervisory liability, Deville's and Floyd's Motion for Summary Judgment (ECF No. 51) should be GRANTED, and Eugene's remaining claims of deliberate indifference and supervisory liability against Deville and Floyd should be DISMISSED WITH PREJUDICE.[7]

---

[7] No claims remain as to Deville or Floyd. Eugene's claims of deliberate indifference and supervisory liability remain as to the remaining named and served Defendants as those claims were not before the Court.

Because Eugene failed to serve the summons and complaint on LeBlanc and LMC, LeBlanc and LMC should be DISMISSED WITHOUT PREJUDICE under Local Rule 41.3 for lack of service of process.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Tuesday, February 22, 2022.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE